Welch, J.
On the 29th of November, 1853, the plaintiffs sold and conveyed to the defendant, Waldo F. Converse, divers tracts of land owned by the plaintiff, Mrs. Anketel, situate in Crawford, Geauga, Ashtabula, and Huron counties, in Ohio. The aggregate price of the land was $13,507.58, of which Converse paid in hand $965.73, giving his notes to tho plaintiff for the remaining $12,-541.85, with a mortgage upon the premises to secure the payment of the same. The px-ice *named, $13,507.58, was in fact the aggregate amount of separate valuations or prices placed by the parties, at the time of the sale, upon the several tracts of land *16 described in the deed and mortgage; and the mortgage contained a provision to the effect, that if Mr. Converse should sell any parcels of the land, the parcels so sold should be released from the mortgage, upon payment to Mrs. Anketel of the respective prices paid by Converse for the same. It was but a single sale, however, and the affixing of separate valuations upon the several tracts, was a mere mode of ascertaining the aggregate sum to be paid, which sum is named in the deed as the price of the whole, without any reference to separate valuations or prices of any of the tracts.
Mr. Converse resided in Ohio, and the deed and mortgage having been executed in Connecticut, where the plaintiffs resided, the mortgage was intrusted to Mr. Converse, to be brought to Ohio and recorded in the several counties where the land lay. The deed and mortgage were so recorded; but it was not until the 25th of January, 1864, that they were recorded in Huron county, where the several tracts of land really in controversy are situate.
Between the date of the deed and mortgage, and the time they were left for record in Huron county, and before any part of the mortgage debt had become due, Converse bargained and contracted to sell to divers persons tracts and parcels of the land. Although he made known to these purchasers the fact that he held iSie deed from Mrs. Anketel, he did not inform them of the execution of the mortgage, and they bought without any actual knowledge or notice thereof. He also made some such sales after the mortgage was recorded.
Mr. Converse having failed to pay the balance of the purchase money, and the mortgage for that reason having become absolute, on the 6th day of August, 1860, the plaintiffs brought their action against him in the common pleas, to subject the premises to the payment of the mortgage debt, both on the ground of an equitable hen for the purchase money, and also by virtue of the mortgage. They also made *the various purchasers under Converse defendants, alleging that they claimed some right in the premises.
No defense is interposed by Converse; but the other defendants set up their several purchases aforesaid, and insist that their equity is superior to that of the plaintiffs, in the parts of the land so by them respectively purchased, and that they should be protected as bona fide purchasers without notice, as against the claim of the plaintiffs.
Of these purchasers there is one class who bought after the *17 mortgage was recorded. On behalf of these, nothing is now claimed.
Another class consists of those who paid to Converse the purchase money in full, and obtained from him deeds of conveyance before the mortgage was recorded, and without notice of plaintiff’s rights. As to these, the petition is dismissed by agreement, there being no controversy but they are entitled to protection as Iona fide purchasers without notice.
The remaining class consists of those who made their purchases, and paid part or all of the purchase money, before the mortgage was left for record, but obtained no deed of conveyance until after it was recorded. The controversy in the case is between the plaintiffs and this latter class of purchasers, as to the priority of lien, or right to the parcels of land by them so purchased. All the cases of this class are not exactly alike. Some paid more and some less of the purchase money. Most of them exercised acts of ownership upon the land, or took ■constructive possession; and one or two took actual, notorious possession. But they are all alike in what we regard as the essential element determining the rights of the parties. They all bought before the mortgage was left for record, and without notice of plaintiffs’ rights. Their contracts were merely executory, giving them no present legal interest or right of possession. They obtained no deeds until after the mortgage was recorded; and the mortgage was recorded before the plaintiffs had actual notice of their rights.
Converse is insolvent, and the mortgaged premises are insufficient to indemnify both parties, or even to satisfy the ^mortgage. A loss, therefore, to the amount, at least, of the money so paid by these purchasers under Converse, is to be borne, either by them or by the plaintiffs, and the question is, upon which should it be cast?
That Mrs. Anketel retained a vendor’s lien upon the lands for the unpaid purchase money seems to be beyond controversy. As the court say in Williams v. Roberts, 5 Ohio, 39, “ The existence of such a lien is too well established to be controverted.”
It is equally well-settled law in Ohio, that the vendor’s lien is not extinguished by taking a mortgage on the premises sold, to secure the payment of the purchase money. This is the precise point decided in Boos v. Ewing, 17 Ohio, 500, and affirmed and acted upon in Neil v. Kinney, 11 Ohio St. 66. And the principle is not varied by the fact that several tracts are put in the same mortgage and *18 deed, and that the purchase money so secured is the aggregate sum of separate estimates of the price or value of each lot, the transaction being a single sale, notwithstanding such a mode resorted to to fix the amount of the purchase money.
It is therefore unnecessary, in the present case, to decide whether the mortgage, until recorded, was wholly void as to third persons, or merely void as a legal mortgage — whether it might not, although no mortgage, stand in equity on the footing of a contract to make u mortgage, and thus give an equity to Mrs. Ankotcl prior and superior to that of the purchasers under Converse; because, without the mortgage, she had an equity of equal value with any which it, as a merely equitable instrument, could give her. Grant, then, that up to the time of recording the mortgage, it was a nullity — that during that time she stood as a vendor without a mortgage- — still she had a lien for the purchase money, and Converse hold the lands as trustee for its payment. Having this lien, she can enforce it against whom? She can enforce it against Converse, and against all claiming under him, except two classes of persons: 1. Those whose equities, though later in date, are superior in merit to hers; and, 2. Those who can protect themselves under the plea of bona fide purchasers without notice. Do the parties defendant here come within ^either of these descriptions? A majority of the court think they do not. It appears to us that the equity of Mrs. Anketel’s lien for the purchase money is equal in merit to that of the defendants, and that the latter do not bring their cases within the rule which entitles thorn to protection as bona fide purchasers.
1. Their equities are equal in point of merit. The one rests on a trust for purchase money due, and the other upon a trust for purchase money paid. The right of one is to have the land sold for the payment of the purchase money, in execution of the contract of sale; and the right of the other is to have it conveyed, in specific execution of the contract of purchase. Both equities ai’e of the same nature and dignity, and neither can rise above the other, except by means of the fraud or laches of the other. There was no fraud hero; and surely no laches of Mrs. Anketel in failing to record her mortgage can have any effect upon her rights not acquired under the mortgage. The utmost effect of that neglect is to suspend all her rights under the mortgage till the date of its record. Her case, -to -say the least, is as meritorious as it would have been had *19 the land been sold and conveyed to Converse by a stranger, and had she taken her mortgage for money loaned to Converse.
2. Nor are the defendants within the rule which protects bona fide purchasers without notice. That rule is applicable only to such as have acquired the legal title. The rule, stated in a more comprehensive form, is, that as between parties holding equal equities, the court will not interfere to change or affect the legal title, or the rights of the parties at law — simply because nothing is gained to equity thereby, the one having as good right in equity as the other. In all cases, where neither party has the legal title, and the equities are equal, the well-known maxim prevails that he who is first in time is first in right. Such would, we think, have been the relative standing of the parties here, had Mrs. Anketel utterly omitted to record her mortgage, or had she never obtained a mortgage. The legal title would then have been in Converse, and both parties would be before the court, as in fact they now are, in the character of actors, demanding that he should be compelled to *yield it up for their benefit. In such ease, the equities being equal, the elder would prevail, and Mrs. Anketel must have the preference. In order to override her equity, the defendants should have trusted to the title, and not to Converse. They should have taken a deed, and not a personal contract. Like Mrs. Anketel, they trusted to Mm, and not to the land. She trusted that he would not incumber or convey it; and they trusted that he had not- incumbered or conveyed it. Nothing but the legal title will suffice to protect either against a prior equity of the other. The defendants acquired no legal title. Taking possession without any right under their contracts so to do, clearly could give them no such title. At most it only made them tenants at sufferance.
But Mrs. Anketel’s case does not stop here. On the 25th of January, 1864, she recorded her mortgage, and whatever equity she then had became clothed with the legal estate. ■ She acquired that legal estate without actual notice of the rights of any of the defendants, and with no constructive notice except in the two eases where the defendants had taken possession. As to all the defendants, then, except these two, she could set up the plea of bona fide purchaser, even if she had no equity prior to the recording of the mortgage. The ground assumed by defendant’s counsel, that notice to Converse was notice to Mrs. Anketel, because he was her agent, we think utterly untenable. He had no agency except to deliver *20 the mortgage for record, and that agency implied no poorer to accept notice of the rights of third persons in the land. The notice has no relation to the business of the agency.
Except as to two of the defendants, then, Mrs. Anketel became a bona fide'purchaser without notice, at the date of the recording of her mortgage. If she was such for valuable consideration, then she is within the rule according her protection against prior equities. It can not be denied that the mortgage stands upon a good consideration as between her and Converse; and the question of consideration is one between them alone.’ That consideration was the debt he still owed her for the land. Admit, for the purpose of deciding this question of consideration, that her lien was extinguished, or overridden by the supposed superior equity of defendants, *or by the fact that they are to be protected against it as purchasers, still the debt is not extinguished. That debt is as valid and meritorious a basis for a mortgage, as would be a new loan of money; and the record of the old mortgage is at least equivalent to the execution of a new one of the date of the record.
It seems to a majority of the court, therefore, that Mrs. Anketel has the better right here, not only by virtue of her vendor’s lien, but, as to all the defendants except two, also because she first acquired the legal title, and acquired the same bona fide, for a valuable consideration, and without notice.
A question is made upon the record, as to the legal method of computing interest, where it is payable annually, and where partial payments are made. In such cases the interest on the principal boars simple interest from the time it falls due till it is paid; and when payments are made, they apply, first, in payment of the interest due on interest; secondly, in. payment of interest due on the principal; and, thirdly, in payment of the principal. But in no case can any part of the interest upon interest be made to bear interest.
Counsel may draw up a decree upon the principles indicated in this opinion. That decree will direct that the parcels of land claimed by defendants be separately appraised, and require the land not so claimed to be first sold. If then found necessary, the parcels so claimed will be separately sold, in the inverse order of the dates at which they were purchased of Converse; with the pxuvilege to each of the several purchasers to hold his land released from the *21 mortgage, by paying upon the mortgage the price at which it was purchased by Converse, with interest.

Decree accordingly.

Day and Brinkerhoee, JJ., concurred; Scott, C. J., and White, J., dissented.